IN THE FIFTEENTH JUDICIAL CIRCUIT OF THE STATE OF ALABAMA
MONTGOMERY COUNTY CIRCUIT COURT

| | | |
|---|---|---|
| ANDREW WAYNE MILLER; JANICE WILLIAMS; JOANNE BROWN; MICHAEL YOUNGBLOOD; CURTIS MILLER; EARL MILLER; DARYL MILLER; LARRY MILLER, | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| PLAINTIFFS, | * | |
| | * | |
| vs. | * | |
| | * | |
| COLONEL J. CHRISTOPHER MURPHY, Director of the Alabama Department of Public Safety; BOB RILEY, Governor of the State of Alabama; TROY KING, Attorney General of the State of Alabama; D.T. MARSHALL, Sheriff of the Montgomery County Sheriff's Department; COLONEL A. D. BAYLOR, Chief of the City of Montgomery Police Department; ELLEN BROOKS, Montgomery County District Attorney; MONTGOMERY COUNTY; PRISON HEALTH SERVICES, INC; NAPHCARE, INC.; RICHARD F. ALLEN, Commissioner of the Alabama Department of Corrections. | * | Case No. 03-CV-08-1416 |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| DEFENDANTS. | * | |

---

**AMENDED COMPLAINT**

---

## PRELIMINARY STATEMENT

Andrew Miller and his siblings seek relief from the residency and notification requirements of Alabama's Community Notification Act (hereinafter the "CNA" or the "Act"). These requirements have left Mr. Miller, a mentally retarded, visually impaired, and physically disabled man, homeless.  The CNA has done so by prohibiting each of Mr. Miller's six siblings from providing shelter and care for their brother.  Consequently, Mr. Miller has been forced by the Defendants to live in a homeless shelter where he is at imminent risk of serious illness, injury, and death.

Andrew Miller was fifteen years old and had just finished an eighth grade special education program for mentally impaired and disabled students when he was accused of sexually assaulting a twenty-six year old woman.  Although there was no physical evidence connecting Andrew Miller to the crime, and the eyewitness described her assailant as a large, bald man of approximately 6'1" and 180 lbs, the police arrested Mr. Miller, who, at just 5'10" tall and weighing only 130 lbs, was a skinny boy with a full head of hair.  Andrew Miller had no criminal or juvenile record; however, because of what the State has conceded was an improper transfer to adult court, Mr. Miller was tried as an adult, convicted, and sentenced to twenty years imprisonment.  Mr. Miller served his entire twenty-year sentence, primarily in mental wards.

While Mr. Miller was incarcerated, the Alabama legislature passed the Community Notification Act.  Alabama's CNA, recognized as one of the most burdensome laws of its

1

kind in the country, permanently bars adult sex offenders from living within 2,000 feet of a school or childcare facility. These 2,000 foot zones cover every residential area in Montgomery County and eliminate any opportunity to find affordable housing.

Though just a child when he was prosecuted, the State classified Mr. Miller as an adult criminal sex offender under the CNA upon his release from prison. As a result, Mr. Miller, whose physical and mental disabilities prevent him from living independently, was banned from living with or near his six siblings because each member of his family lives in a restricted zone. In addition, the CNA has eliminated Mr. Miller's ability to secure alternative housing in a group home setting that would allow him to receive the supervision necessary to manage his serious medical needs.

This action is brought pursuant to 42 U.S.C. § 1983, the United States Constitution, and Alabama law. The State's erroneous application of the CNA's notification requirements and residency restrictions violates Mr. Miller and his family's rights, privileges, and immunities as secured by the Constitution of the United States and Alabama law, thereby entitling them to relief.

**JURISDICTION**

1.    The jurisdiction of this Court is invoked pursuant to Ala. Code § 12-11-31, et seq.

**PLAINTIFFS**

2.    Plaintiff Andrew Miller is a 37-year old African-American man with a long

2

history of mental and physical disabilities. In 1987, Mr. Miller was convicted and sentenced to twenty years incarceration for events stemming from the sexual assault of a 26-year-old woman. Mr. Miller was fifteen years old at the time of the offense. Upon his release in 2007, the State classified Mr. Miller as an adult criminal sex offender subject to the CNA's broad-reaching residency restrictions. As a result, Mr. Miller is unable to live with any member of his immediate family, each of whom lives within 2000 feet of a school or childcare facility and many of whom have minor children residing in the home. Mr. Miller is incapable of living independently, but the CNA's residency restrictions prevent him from living with any member of his family. The Alabama Department of Mental Health and Mental Retardation has also been unable to identify a residential program as a result of these restrictions. Mr. Miller has thus been forced into a homeless shelter where he is at grave risk of serious physical illness and injury, mental decompensation, and death.

3.    Plaintiff Janice Williams is an older sibling of Plaintiff Andrew Miller. A life-long resident of Montgomery, Ms. Williams now lives in a home on Burgwyn Road. When Mr. Miller was released from prison, Ms. Williams sought to provide him shelter. However, when she submitted her address to the police she discovered that her home was within 2000 feet of a school or child care facility and that she was not permitted to bring her brother into her home to live with her family. Her family also included a minor child. Ms. Williams still wishes to have her brother live with her family but, she is prevented from doing so by the residency restrictions in the CNA.

3

4.    Plaintiff Michael Youngblood is an older sibling of Plaintiff Andrew Miller. Mr. Youngblood lives with his wife in a home on West Shades Valley Drive in Montgomery. He is a military veteran and recently retired from the United States Postal Service after 16 years of service. When Mr. Miller was released from prison, Mr. Youngblood sought to provide him shelter. However, when he submitted his address to the police he discovered that his home was within 2000 feet of a school or child care facility and that he was not permitted to bring his brother into his home to live with his family. Mr. Youngblood wants to have Mr. Miller live with him, but is prevented from doing so by the residency restrictions in the CNA.

5.    Plaintiff Earl Miller is an older sibling of Plaintiff Andrew Miller. Mr. Miller currently resides with his wife and two minor children in a home on Winderton Street in Montgomery. Mr. Miller is a life-long resident of Montgomery. When Mr. Miller was released from prison, Mr. Youngblood sought to provide him shelter. However, when he submitted his address to the police he discovered that his home was within 2000 feet of a school or child care facility and that he was not permitted to bring his brother into his home to live with his family. Mr. Miller would like to allow Andrew Miller to live with him, but is prevented from doing so by the residency restrictions in the CNA.

6.    Plaintiff Daryl Miller is an older sibling of Plaintiff Andrew Miller. He has lived in Montgomery his entire life, and now resides in a home on West Fleming Road with his wife and two minor children. When Mr. Miller was released from prison, Mr. Miller

4

sought to provide him shelter. However, when he submitted his address to the police he discovered that his home was within 2000 feet of a school or child care facility and that he was not permitted to bring his brother into his home to live with his family. Daryl Miller would like to have Mr. Miller move into his home, but is prevented from doing so by the residency restrictions in the CNA.

7.    Joanne Brown is an older sibling of Plaintiff Andrew Miller. She now resides in a home on Leicester Rd in Montgomery with one of her minor children. When Mr. Miller was released from prison, Ms. Williams sought to provide him shelter. However, when she submitted her address to the police she discovered that her home was within 2000 feet of a school or child care facility and that she was not permitted to bring her brother into her home to live with her family. Mrs. Brown would like for Andrew Miller to live with her, but this cannot happen because of the CNA's residency restrictions.

8.    Curtis Miller is an older sibling of Plaintiff Andrew Miller. He resides in a home on Dee Drive in Montgomery with his minor children. When Mr. Miller was released from prison, Mr. Miller sought to provide him shelter. However, when he submitted his address to the police he discovered that his home was within 2000 feet of a school or child care facility and that he was not permitted to bring his brother into his home to live with his family. Curtis Miller would allow Mr. Miller to live with him, but cannot do so because of the residency restrictions in the CNA.

9.    Larry Miller is an older sibling of Plaintiff Andrew Miller. He resides in a

home on Dee Drive in Montgomery with his minor children. When Mr. Miller was released

from prison, Mr. Miller sought to provide him shelter. However, when he submitted his

address to the police he discovered that his home was within 2000 feet of a school or child

care facility and that he was not permitted to bring his brother into his home to live with his

family. Mr. Miller would allow Mr. Miller to live with him, but cannot do so because of the

residency restrictions in the CNA.

## DEFENDANTS

10.    Defendant Colonel J. Joseph Murphy is the Director of the Alabama

Department of Public Safety. The CNA grants him the authority to promulgate any rules

necessary to the implementation and enforcement of the Act. Ala. Code § 15-20-38 (c). He

is sued in his official capacity.

11.    Defendant Bob Riley is the Governor of the State of Alabama. Governor

Riley's predecessor in office enacted the current version of the CNA in 1999. He is sued in

his official capacity.

12.    Defendant Troy King is the Attorney General of the State of Alabama. Under

the CNA, his office assists with monitoring the residence of individuals made subject to the

Act. Ala. Code § 15-20-22. He is sued in his official capacity.

13.    Defendant D.T. Marshall is the Sheriff of the Montgomery County Sheriff's

Office. The CNA charges him with assisting in the implementation of the Act's provisions

governing community notification and residency restrictions. Ala. Code § 15-20-23, 24, 25,

26. He is sued in his official capacity.

14.    Defendant Colonel A.D. Baylor is the Chief of the Montgomery Police Department.  The CNA charges him with assisting in the implementation of the Act's provisions pertaining to community notification and residency restrictions.   Ala. Code § 15-20-23, 24, 25, 26  He is sued in his official capacity.

15.    Defendant Ellen Brooks is the District Attorney for Montgomery County.  Her office is charged with enforcing the criminal provisions of the CNA.  Ala. Code § 15-20-22, 23, 24, 26.

16.    Defendant Montgomery County is a county located in the State of Alabama.

17.    Defendant Richard F. Allen is the Commissioner of the Alabama Department of Corrections ("ADOC").  His office is responsible for ensuring for the care and custody of inmates confined in Alabama's prison system, including the provision of medial care.  He is sued in his official capacity.

18.    Defendant NaphCare, Inc., was one of the medical providers that administered the ADOC's inmate health program during Mr. Miller's incarceration.

19.    Defendant Prison Health Services, Inc., was one of the medical providers that administered the ADOC's inmate health program during Mr. Miller's incarceration.

FACTUAL ALLEGATIONS

20.    In 1986, Andrew Miller, a mentally retarded 15-year-old, was arrested in connection with the sexual assault of a twenty-six year old woman.  There was no physical

7

evidence connecting Mr. Miller to the offense. The rape kit and other physical evidence collected at the crime scene did not match Mr. Miller. DNA testing that was not available at the time of trial would exonerate him now. The State, however, destroyed this evidence just two years after Mr. Miller's conviction.

21.     Although the victim told the police on a number of occasions that she did not get a good look at her assailant, the police pressed the victim to make an identification. Eight days after the offense, a friend and neighbor of the victim suggested to her that the police investigate a young man in their community nicknamed "Chicken Wayne." "Chicken Wayne" was a common nickname shared by several young men and boys at Smiley Court, including Mr. Miller.

22.     Though the victim initially described her assailant as a large, bald man of approximately 6'1" and 180 lbs, the police arrested Mr. Miller, who, at just 5'10" tall and weighing only 130 lbs, was a skinny boy with a full head of hair at the time of this offense.

23.     On the same day he was arrested, Mr. Miller was improperly transferred to adult court. The State notified the court that Mr. Miller's transfer to adult court was improper and filed a motion to transfer Mr. Miller, a mentally retarded boy who had never been in trouble before, back to juvenile court for adjudication. The circuit court granted the State's motion to transfer Mr. Miller back to the juvenile court.

24.     Upon receipt of the circuit court's order, the juvenile court did not dispute the factual finding made by the circuit court that Andrew belonged in juvenile court, not adult

8

court. However, the juvenile court found that the circuit court's transfer order did not provide him with jurisdiction over Mr. Miller's case. The court subsequently ordered that Mr. Miller be returned to the Montgomery County jail.

25.    Notwithstanding the State's admission and the Circuit Court's decree that Mr. Miller's case should be handled by the Juvenile Court, Mr. Miller was forced to stand trial as an adult.

26.    The State offered Mr. Miller a three-year plea agreement, but Mr. Miller refused the offer and maintained his innocence. Though impoverished, Mr. Miller's family pooled their resources to retain William Edwin May to represent Mr. Miller at trial for a fee of $2,000.[1]

27.    Mr. Miller's entire trial, from jury selection to jury verdict, lasted less than six hours. Mr. Miller was convicted of rape, sodomy, burglary, and robbery on March 17, 1987. He was sentenced to twenty years on April 17, 1987.

28.    The sentencing judge did not consider Mr. Miller's age or mental limitations in fashioning this sentence. Further, in violation of Alabama and federal constitutional requirements, neither the trial court nor Mr. Miller's counsel informed him of his right to appeal his sentence or his right to appointed counsel if he could not afford one.

29.    After Mr. Miller was sentenced, his attorney, Mr. May, left town and was never heard from again. Mr. May's license was suspended for deceitful or willful misconduct that

---

[1]William Edwin May was later suspended by the Alabama State Bar for deceitful or willful misconduct in another case he handled the same year as Mr. Miller's trial.

same years. Having used most of its available funds to hire Mr. May, Mr. Miller's family could not afford the costs of investigating and filing an appeal. Because Mr. Miller and his family did not understand Mr. Miller's rights, no appeal was ever filed in this case. Mr. Miller also never filed a Rule 32 challenge to his conviction or sentence.

30.    Despite the fact that Mr. Miller was only fifteen-years old and mentally retarded, he was incarcerated in adult prisons where, because of his young age and adaptive limitations, he was preyed upon and abused by older adult inmates. Mr. Miller's intellectual and developmental disabilities compounded his difficulties, as he never learned how to navigate these dangers. In the process, Mr. Miller's mental health suffered enormously, causing Mr. Miller to spend the bulk of his incarceration in mental health wards.

31.    Mr. Miller served every day of his twenty-year prison sentence. He was released on September 20, 2006, at the age of 35.

32.    During his incarceration, Mr. Miller's family remained devoted to him. His mother and siblings visited him every week. Both of Mr. Miller's parents, and two of his brothers, passed away while he was incarcerated. Each of his remaining seven siblings eagerly awaited the day when Mr. Miller could return home with them.

33.    While incarcerated, Mr. Miller had a corneal transplant in 2003, during which stitches were placed in Mr. Miller's eyes. For years following the surgery, Mr. Miller experienced extreme discomfort and loss of vision. Mr. Miller made frequent complaints about his condition to the prison medical staffs at the Kilby and Bullock correctional

10

facilities. Shortly after Mr. Miller's release in 2006, Mr. Miller's optometrist discovered that Mr. Miller's continued loss of vision was due to the fact that the prison failed to arrange for the removal of Mr. Miller's stitches. Mr. Miller was forced to undergo additional surgery to have his stitches removed.

34.    In 1996, nearly ten years after Mr. Miller began serving his sentence, the Alabama legislature passed the Community Notification Act. Ala. Code 1975 § 15-20-20, et seq. Considered "among the broadest and most restrictive of such laws in the nation," Doe v. Pryor, 61 F.Supp. 2d 1224, 1226 ( M. D. Ala. 1999), the CNA automatically deems adult sex offenders a grave risk to public safety, imposes broad notification and reporting requirements, and bans these offenders from residing near schools or child care facilities. Ala Code § 15-20-26(a). The CNA imposes these restrictions without providing for an individualized hearing to determine the offender's risk of re-offending.

35.    **These restrictions do not apply to juvenile offenders.** Recognizing that juvenile offenders do not pose the same risk to public safety as adults, the legislature exempted juveniles from the CNA's automatic residency and notification requirements.

36.    Mr. Miller was only fifteen years old at the time of the offense. There was no question that Mr. Miller should have been treated as a juvenile offender; yet, the State has treated him as an adult sex offender for purposes of the CNA and subjected him to its automatic notification and residency requirements. Most onerous of these are the CNA's provision preventing Mr. Miller from residing within 2,000 feet of a school or child care

11

facility, Ala Code 1975 § 15-20-26 (a), and the provision preventing Mr. Miller from living in a home where a minor resides, Ala. Code § 15-20-26 (c).

37.     Because of these restrictions, it is impossible for Mr. Miller and his surviving seven siblings to reside together.  The Department of Public Safety rejected his siblings' addresses as appropriate residences, as they all were within 2,000 feet of a school or child care facility.  However, the State provided Mr. Miller no assistance in finding housing that met the CNA's residency restrictions.[2] The CNA's residency restrictions have left Mr. Miller homeless and banished him from his family and community.

38.     Upon his release, Mr. Miller initially lived at the RESTOR homeless shelter run by Reverend Al Dixon.  Although Mr. Miller is disabled and cannot work, the shelter required Mr. Miller to leave the shelter during working hours.  He was forced to stand outside of the shelter for six hours a day in the grueling summer heat.  Because Mr. Miller

---

[2]The Department of Public Safety, the agency charged with enforcing the CNA, provides no guidance or direction whatsoever in identifying suitable housing.  The Montgomery Sheriff's office provides an interactive map which allows viewers to submit any address within the county to determine whether schools are within a 2,000 radius.  This is meaningless, however, because the maps do not include DHR licensed home child care providers, which also qualify for buffer zones.  The site neither provides this information, nor warns viewers that the maps are incomplete.

The Montgomery Police Department similarly provides no assistance in identifying suitable housing, other than to suggest that sex offenders roam neighborhoods looking for "swing sets" or other indications of a home day care or school.  While a registered sex offender can submit addresses to the department for approval, the department warns that department approval does not mean that the address meets the CNA's requirements and that if the registrant moves to the new location based on department approval, they can still be arrested.  Moreover, once the department approves an address, the registrant is required to wait 30 days to move in so that DHR child care center records can be updated.  If a new child care home has been licensed within the 30-day waiting time, the registrant will not be able to live there.

is a diabetic with chronic high blood pressure, this exposure threatened his life.

39.     With Mr. Miller's health placed in imminent danger, Mr. Miller's family took emergency measures to raise funds to move Mr. Miller out of the shelter. Mr. Miller, his family, and staff at the Equal Justice Initiative spent months searching for a residence that met the CNA's restrictions. After investing hundreds of hours in this housing search, no permanent housing could be identified, and the only compliant housing that could be located was a temporary stay hotel on the South Boulevard in the industrial section of Montgomery. Because this the only identifiable area of Montgomery where sex offenders can live, there is a high concentration at and surrounding the hotel.

40.     The hotel charged Mr. Miller over $700 per month in rent, which is more than the $600 per month Mr. Miller receives in disability benefits. Although the hotel met Mr. Miller's immediate need for indoor shelter, it failed to meet Mr. Miller's other basic needs. The hotel does not provide meals, and, because Mr. Miller's adaptive disabilities render him unable to manage his diet properly, Mr. Miller quickly began to experience serious complications with his diabetes. Mr. Miller was also isolated from the assistance he needs in taking his numerous medications morning, noon, and night.

41.     Cut off from any assistance in managing his diet or medical and psychiatric conditions, Mr. Miller's mental and physical health deteriorated. He entered a psychiatric and medical crisis in July 2008. Desperate for help, Mr. Miller's family took him to the Jackson Hospital Emergency room. Mr. Miller was involuntarily committed to the State

13

Department of Mental Health on July 18, 2008.

42.     Mr. Miller was treated at the Crisis Residential Facility in Montgomery, Alabama. His care givers at the hospital concluded that Mr. Miller's disabilities would prevent him from ever living on his own. Mr. Miller would therefore have to live with family or in group home settings to ensure the provision of his daily needs. The Department of Mental Health and Mental Retardation ("DMHMR") and Mr. Miller's social worker at the Crisis Center, however, were unable to identify a single suitable placement for Mr. Miller as a result of the CNA's restrictions. Mr. Miller was therefore returned to the homeless shelter.

43.     The State released Mr. Miller with over one dozen prescriptions to treat his medical and psychiatric illnesses, each medication to be taken in different doses and at different times. The State has not provided Mr. Miller with any assistance or direction in managing this complicated regime, even though DMHMR recognized that the homeless shelter did not have the capacity to assist Mr. Miller with his medication schedule. All Mr. Miller has to guide him are the directions provided by the pharmacy on each separate medication, which Mr. Miller cannot read or understand due to his disabilities.

44.     While Mr. Miller is incapable of understanding and following his complicated medical regimen, he has been barred from every source of assistance with this essential task. Unless he is relieved from the Act's residency requirements, Mr. Miller, who is indigent and unable to live independently, will remain homeless and at imminent risk of serious physical

14

illness and injury, mental decompensation, and death.

## VIOLATIONS OF STATE AND FEDERAL LAW

### Count One

45.     The defendants have erroneously classified Andrew Miller as an adult criminal sex offender and subjected him to the CNA's automatic notification requirements and residency restrictions, thus infringing upon Mr. Miller's liberty interests without providing constitutionally adequate process, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Alabama law.

### Count Two

46.     The defendants, by enforcing the CNA's residency restrictions against Andrew Miller, have unduly burdened Mr. Miller and his family's fundamental right to familial association, and Mr. Miller's rights to intrastate travel and personal safety.  The defendants have violated the plaintiffs' fundamental rights in a manner that is neither narrowly tailored to serve a compelling state interest, nor rationally related to a legitimate state interest, in violation of the First and Fourteenth Amendment to the United States Constitution and Alabama law.

### Count Three

47.     Though Mr. Miller was accused of a sex offense while still a child and before

15

the passage of the CNA, the defendants have denied Mr. Miller the protections now afforded by the CNA to children accused of sex offenses, in violation of the Equal Protection Clause of the Fourteenth Amendment and Alabama law.

## Count Four

48.    The defendants, by retroactively enforcing the CNA, have exposed Andrew Miller to additional punishment than that authorized by the law under which Mr. Miller was convicted and sentenced, in violation of the Ex Post Facto Clause of Article I, Section 9 of the United States Constitution and Alabama Law.

## Count Five

49.    By its knowing failure to remove the stitches in Miller's eyes for over three years, the prison medical staff displayed deliberate indifference to Mr. Miller's serous medical needs, in violation of the prohibition against cruel and unusual punishment in the Eighth Amendment to the United States Constitution and Alabama law.

## Count Six

50.    The defendants, by placing demands and restrictions upon Mr. Miller that are impossible for him to comply with because of his severe mental and physical disabilities, and by impeding Mr. Miller's access to the facilities, resources, and services necessary to care for his severe mental and physical disabilities, have violated Mr. Miller's rights to Due Process and Equal Protection under the Fourteenth Amendment to the United States

16

Constitution and Alabama law.

**Prayer for Relief**

On the basis foregoing, Plaintiffs respectfully request this Court to do the following:

(A)    Declare that the policies, practices, acts and omissions of the defendants described in this complaint are in violation of the plaintiffs' rights to intimate association, due process, to the equal protection of the laws, to be free of cruel and unusual punishment, and to be free of retroactively applied punishment.

(B)    Permanently enjoin defendants, their officers, agent, employees, and successors in office, as well as those acting in concert with and participating with them from subjecting Plaintiffs to the illegal, and unconstitutional conditions described in this Complaint;

(C)    Award damages for the harm caused by the Defendants' infliction of wanton and unnecessary pain upon Mr. Miller while in DOC custody;

(D)    Retain jurisdiction of this matter until this Court's order has been fully implemented;

(E)    Award plaintiffs their reasonable costs and attorneys' fees; and

(F)    Grant such other relief as may be just and reasonable.

17

Respectfully Submitted


BRYAN A. STEVENSON
CHARLOTTE R. MORRISON
BRANDON J. BUSKEY
Equal Justice Initiative
122 Commerce Street
Montgomery, AL 36104
(334) 269-1803

COUNSEL FOR PLAINTIFFS

September 17, 2008

18

## ATTORNEY'S VERIFICATION

I swear under penalty of perjury that, upon information and belief, the foregoing is true and correct. Signed on October 9, 2008.

Charlotte Morrison

19

# CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2008, I served a copy of the attached pleading by first-class mail, postage prepaid to:

Winfield Sinclair
Peter Smyczek
Office of the Attorney General
11 South Union
Montgomery, AL 36130
334-242-7300

Thomas Gallion
Constance Walker
Haskell Slaughter Young & Gallion, LLC
305 South Lawrence
P.O. Box 4660
Montgomery, Alabama 36103
334-265-8573

Ellen Brooks
Montgomery County District Attorney's Office
251 South Lawrence Street
Montgomery, AL 36102

Tyrone Means
Latasha Meadows
3121 Zelda Court
PO Drawer 5058
Montgomery, AL 36106

Michael Catalano
Richard Hallworth
Prison Health Services, Inc.
105 Westpark Drive
Suite 200
Brentwood, TN 37027

Richard F. Allen

20

Alabama Department of Corrections
301 S. Ripley Street
Montgomery, AL. 36130-1501

James S. McLane, CEO
NaphCare, Inc.
950 22nd Street North, Suite 825
Birmingham, AL 35203

Colonel Art D. Baylor
Office of the Chief of Police
Montgomery Police Department
320 N Ripley St
Montgomery, AL 36104

Jason Cole Paulk
City of Montgomery
PO Box 1111
Montgomery, AL 36101
334-241-2181

Walter Byars
Steiner, Crum & Byars
PO Box 668
Montgomery, AL 36101
334-832-8800

Charlotte Morrison

21